FILED'08 APR 29 10:37us CORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FLOYD M. REID,

        Plaintiff,

    v.

EVERGREEN AVIATION GROUND
LOGISTICS ENTERPRISE, INC., a
Delaware corporation, EVERGREEN
INTERNATIONAL AVIATION, INC., an
Oregon corporation, and DELFORD
SMITH, individually,

        Defendants.

Civ. No. 07-1641-AC

OPINION AND ORDER

---

ACOSTA, Magistrate Judge:

    Plaintiff Floyd Reid ("Reid") is a former employee of Defendant Evergreen Aviation Ground

1

Logistics Enterprise, Inc. ("EAGLE"), who asserts, among other claims against EAGLE, Evergreen International Aviation, Inc. ("Evergreen"), and Delford Smith ("Smith") (collectively "Defendants"), a race discrimination claim under 42 U.S.C. § 1981. Reid sought at deposition to question Smith about his alleged comments regarding Hispanics, Jews, and a person of British national origin. Defendants move for a protective order "prohibiting [Reid] from taking discovery in any form that relates to alleged discrimination on any basis other than [Reid's] race, African-American." (Defendants' Motion for Protective Order 2.) For the reasons stated below, Defendants' motion is granted in part and denied in part.

The parties' dispute is straightforward. Defendants argue that Reid should be prohibited from conducting discovery about discriminatory practices or conduct that does not pertain specifically to Reid's race, African-American. Reid responds that he should be permitted to inquire into Defendants' treatment of members of racial groups generally, and in particular into derogatory statements allegedly made by Smith regarding Hispanics, Jews, and persons of British national origin. Reid does not seek to expand his questioning of Smith or his discovery, generally, to alleged discriminatory conduct against other protected groups.

Discrimination claims under § 1981 and Title VII, disparate treatment, are governed by the same legal framework. *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797-98 (9th Cir. 2003). *See also Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 733 (9th Cir. 1986) (Title VII and § 1981 claims are analyzed similarly). Accordingly, Reid must produce direct or circumstantial evidence of disparate treatment based on race to sustain his § 1981 claim. The Ninth Circuit addressed this issue in *EEOC v. Farmers Bros. Co.*, 31 F.3d 891, 897 (9th Cir. 1994). In *Farmer Bros.*, a female employee was laid-off from her job. At the same time, her employer ("defendant") was both

retaining current male employees and rehiring laid-off male employees. The Equal Employment Opportunity Commission brought a class-action gender discrimination claim against defendant following an investigation that showed defendant had treated more than thirty female employees in a similar fashion. After a bench trial, the district court found that defendant had discriminated against the class of female plaintiffs, based in part on evidence that "sexist views" were "common" among defendant's male managerial staff. *Id.* at 896. This evidence included testimony by a female employee that she had experienced sexually offensive comments and physical touching by a manager with decision-making authority, and that she had observed the same manager treat other female employees in a similar fashion. *Id.* at 897. A male employee confirmed that he had heard the same manager make offensive comments about female employees' anatomy "on a daily basis," and had witnessed the manager touching female employees, on multiple occasions, in a flagrantly inappropriate way. *Id.* at n.3.

On appeal, defendant argued that the district court should have excluded the testimony of these two employees because "evidence of sexual harassment is not relevant to prove a gender discrimination claim . . . ." *Id.* at 897. The court rejected this argument and stated that "Farmer Bros.'s contention that evidence of sexual harassment can never be relevant to a claim of discriminatory discharge on the basis of gender is without merit." *Id.* After reviewing the definition of relevant evidence under Federal Rule of Evidence 401, the court found that "the district court's admission of evidence regarding [the manager's] sexual harassment and his disparaging remarks about women was proper if the evidence made it 'more or less probable' that [plaintiff] was discharged or not rehired because of her gender." *Id.* at 897. The court then observed that "[b]ecause hostility against women underlies decisions to discharge or to refuse to hire women

because of their gender, evidence of sexual harassment often will be relevant to claims of gender-based employment discrimination." *Id.* at 898 (citing *Waltman v. International Paper Co.*, 875 F.2d 468, 471-72, 482 (5th Cir. 1989) (discussing male employees' use of sexual harassment for the purpose of distressing and demeaning a female co-worker)). *Accord Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994) (finding that a supervisor used sexual harassment to distress or disempower rather than to seduce female employees).

Here, Reid claims that Defendants violated § 1981's prohibition against discrimination based on race. Like a Title VII plaintiff, a § 1981 plaintiff must show by direct or circumstantial evidence that the defendant engaged in intentional discrimination. This, in turn, makes relevant a defendant's motive for engaging in the challenged conduct. Discriminatory conduct that undermines § 1981's prohibition against racial discrimination or that suggests a racially hostile attitude may be probative as to whether the statute was violated in a particular case. Accordingly, Defendants' motion to prohibit Reid's discovery of conduct or comments pertaining to racial animus is denied.

Smith's deposition testimony supports this conclusion. In his deposition, Smith expressly denied making the "welfare recipient" comment that Reid asserts he made, and also declared "I'm not a racist . . . ." (Smith Deposition 7:23-8:3, 18:17.) By denying both specific discriminatory conduct toward Reid and generally racist views, Smith fairly raises the question of his own race-based discriminatory practices. For this additional reason, Defendants' motion on this point is denied.

The court also finds that "race," for purposes of this ruling, includes alleged comments and conduct directed at persons of Jewish ancestry. The Ninth Circuit has adopted the Supreme Court's conclusion in this regard. In *Krain v. Kahn*, 1992 U.S. App. LEXIS 32411 (9th Cir. Dec. 1, 1992),

the Ninth Circuit rejected the district court's conclusion that a Jewish plaintiff who brought a race discrimination claim failed to state a claim. The court found that the district court "incorrectly concluded that Jews are not a race for purposes of § 1981. The Supreme Court has held that Jewish ancestry is a race for purposes of § 1981." *Id.* at *4 (citing *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 612, 613 (1987)). This interpretation applies to claims brought under both § 1981 and § 2000e-2(a). *See Rubin v. Kirkland Chrysler-Jeep, Inc.*, 2006 U.S. Dist. LEXIS 59549, *7 n.3 (W.D. Wash. Apr. 13, 2006) (finding, for purposes of § 1981 and §2000e-2(a) claims, that "Ethnic Jews are a 'race' within the ambit of federal anti-discrimination statutes"). Accordingly, Defendants' motion to prohibit discovery of alleged discrimination against persons of Jewish ancestry is also denied.

The court further finds that Smith's alleged comments relating to a person of British national origin are discoverable. Defendants' motion seeks to prohibit Reid from questioning Smith about an alleged comment pertaining to a person of British national origin but, because Reid has based his race discrimination claim on § 1981, this line of inquiry is appropriate.

The Supreme Court addressed this issue in *St. Francis College*, 481 U.S. 604. There, a former employee sued the college for race discrimination under §1981 after the college denied him tenure. The college argued that the former employee, of Arab ancestry, was considered Caucasian by current standards and therefore could not assert a race discrimination claim under §1981. *Id.* at 609. The Supreme Court rejected the college's argument, first noting that the college wrongly assumed that "all those who might be deemed Caucasians today were thought to be of the same race when § 1981 became law in the 19th century . . . ." *Id.* at 610. After a detailed review of the definitions of "race" common at the time of the statute's enactment, the Court observed that "[t]hese

dictionary and encyclopedic sources are somewhat diverse, but it is clear that they do not support the claim that for the purposes of § 1981, Arabs, Englishmen, Germans, and certain other ethnic groups are to be considered a single race." *Id.*, 481 U.S. at 610-12.

The Court then noted that the legislative history of § 1981 confirmed this reading of the statute. *Id.* at 612. It found that "[b]ased on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory." *Id.* at 613. The Court concluded by finding that if on remand the former employee could prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, "he will have made out a case under § 1981." *Id.* The Ninth Circuit has followed the *St. Francis* analysis in interpreting § 1981. *See Manatt*, 339 F.3d at 798 (race has been defined broadly to cover immigrant ethnic groups, citing *St. Francis*).

Here, derogatory comments allegedly made about a person's British national origin are discoverable because they could be relevant to Reid's § 1981 claim. As the Supreme Court made clear, § 1981's scope includes a broader meaning of "race" than current standards admit. Accordingly, Reid may question Smith about derogatory comments Smith allegedly made about a person of British national origin, and Defendants' motion to prohibit discovery as it pertains to this additional area is also denied.

Otherwise, Defendants' motion to prohibit discovery of discrimination against other protected classes, such as those based on gender, religion, and age, is granted.

*Conclusion*

In accordance with the foregoing, Defendants' motion for a protective order (#14) is GRANTED in part and DENIED in part. To the extent that the motion is denied, it is denied without prejudice and Defendants may renew this motion upon the belief that Reid has violated the parameters outlined here.

DATED this 29th day of April, 2008.

IT IS SO ORDERED.

JOHN V. ACOSTA
United States Magistrate Judge